**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: April 05, 2023

Mr. Peter K. Glenn-Applegate
Office of the U.S. Attorney
303 Marconi Boulevard, Suite 200
Columbus, OH 43215

Mr. Roger P. Sugarman
Law Office
6025 Cranberry Court
Columbus, OH 43213

          Re: Case No. 21-3898, *United States v. Raphael*
              Originating Case No. : 2:20-cr-00226-1

Dear Counsel,

   The Court issued the enclosed opinion today in this case.

   Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                                   Sincerely yours,

                                   s/Laurie A Weitendorf
                                   Opinions Deputy

cc: Mr. Richard W. Nagel

Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0156n.06

No. 21-3898

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Apr 05, 2023
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|  Plaintiff-Appellant, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| JOHN P. RAPHAEL, | ) ) | |
|  Defendant-Appellee. | ) ) ) | OPINION |

Before: BATCHELDER, WHITE, and MURPHY, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** John Raphael, an appointed public official, pled guilty to "honest services wire fraud," 18 U.S.C. §§ 1343, 1346, for his role in a bribery scheme that helped a private company win a government contract. After calculating a guidelines range of 41-51 months in prison, the district court imposed a non-custodial sentence. Because the district court did not explain why the § 3553(a) factors justified such a dramatic downward variance, we vacate the sentence and remand for resentencing.

**I.**

Raphael, an experienced lobbyist and political consultant, served as an appointed board member and treasurer of the Franklin County Convention Facilities Authority (the "FCCFA") during all times relevant to this case. As a public agency, the FCCFA oversees the operation of the Greater Columbus Convention Center located on North High Street near downtown Columbus, Ohio (the "Convention Center").

No. 21-3898, *United States v. Raphael*

Enter Centerplate, Inc., a catering company based out of Connecticut. Centerplate hired Raphael as a consultant in 2013 to help the company win food-vendor bids for venues such as the Convention Center. The consulting agreement included a $5,000 monthly retainer fee for Raphael, and a "success fee" to be paid to Raphael for each food-vendor bid that Centerplate won in central Ohio.

In early 2014, the FCCFA sought a new food-service vendor for the Convention Center. Because the Convention Center was one of the largest venues in central Ohio, its food-service contract was a coveted one. Centerplate, along with three other companies, planned to submit bids. But Raphael, as an FCCFA board member in his public capacity, and a Centerplate consultant in his private capacity, did not disclose the obvious conflict of interest. Instead, Raphael, leveraging his position as an FCCFA board member, helped Centerplate win the food-vendor bid for the Convention Center.

Raphael helped Centerplate in at least five ways. First, in March 2014, he sent confidential evaluations of the incumbent food-service vendor to Centerplate, but not to the other bidders. Second, in May 2014, he sent private contractual documents between the FCCFA and the incumbent food-service vendor to Centerplate, but not to the other bidders. Third, in July 2014, he sent the draft Request for Proposals ("RFP") and draft sample contract to Centerplate, but not to the other bidders. At the time, these non-public documents were under internal review by the FCCFA board. Fourth, in July 2014, Raphael, in his capacity as an FCCFA board member, attended a committee meeting regarding the RFP. At this point, he still had not disclosed his consulting agreement with Centerplate. Fifth, in September 2014, Raphael attended another meeting with the chair of the FCCFA, an FCCFA consultant, and the executive director of the Convention Center, still without having disclosed the consulting agreement with Centerplate. Not

No. 21-3898, *United States v. Raphael*

surprisingly, Centerplate won the bid and promptly paid Raphael a success fee of $40,000 for helping Centerplate win the bid.

However, Raphael's bribery scheme did not stay hidden for long. In 2015, the Ohio Ethics Commission ("OEC"), prompted by concerns of corruption, investigated Centerplate and its relationship with Raphael. During the OEC's investigation of Raphael, he denied assisting Centerplate with winning the Convention Center bid. He also denied that Centerplate paid him $40,000 as a success fee for winning the bid. He even submitted a falsified copy of his consulting agreement with Centerplate that purported to show that the parties had amended the success-fee provision over the phone.

Although nothing came of Raphael's bribery scheme with Centerplate for another five years, he found himself in trouble with the law in another matter. In October 2015, Raphael pled guilty to interfering with commerce by threats. That conviction arose from Raphael's extorting a company to pay campaign contributions to various candidates in exchange for securing traffic-light-systems contracts with several Ohio cities. The district court sentenced Raphael to 15 months of imprisonment, one year of supervised release, and a $5,000 fine. By October 2018, Raphael had completed all the terms of this sentence.

In December 2020, the federal government charged Raphael, and Raphael pled guilty to, one count of "honest services wire fraud" for his bribery scheme with Centerplate. After the district court accepted Raphael's guilty plea, all that remained was sentencing. The Presentence Investigation Report ("PSR") for Raphael determined a total offense level of 24 and a Criminal History Category of II, which resulted in a guidelines range of 57-71 months of imprisonment.

Raphael objected to the PSR's recommended guidelines range and requested a downward departure because of his physical condition and a downward variance based upon some of the

§ 3553(a) factors. Specifically, he asked the court to weigh his history of service in the community, his medical needs, and the need to avoid sentencing disparities among similarly-situated defendants.[1] The government opposed a downward variance because of the seriousness of the offense, the undermining of public trust caused by the bribery scheme, and the need for general deterrence. It also argued that Raphael's personal history, age, and health did not justify a downward variance.

At the sentencing hearing, Raphael withdrew his request for a downward departure, but the district court nevertheless reduced the final guidelines range to 41-51 months of imprisonment based on Raphael's acceptance of responsibility. The government did not object.

The court then turned to hearing mitigation arguments. Raphael's counsel spoke first. He asked for a non-custodial sentence because of Raphael's advanced age, his myriad medical conditions, his loss of business, loss of earning potential, and loss of reputation. Raphael's counsel also mentioned that a non-custodial sentence would avoid a sentencing disparity with Rodney Myers, who received a non-custodial sentence for similar conduct. Counsel closed by pointing out that Raphael's prior conviction and sentence for extortion already served the need for general deterrence, and that Raphael should not be considered a repeat offender because the bribery scheme with Centerplate occurred prior to Raphael's conviction and sentence for extortion.

The government responded with the recommendation of 41 months of imprisonment because of the added weight of Raphael's wrongdoing as a public official, and the need for a

---

[1] On this point, Raphael pointed the court to Rodney Myers, who, like Raphael, pled guilty to a conviction that arose from a bribery scheme with Centerplate. The FCCFA board, with Raphael's endorsement, hired Myers as an independent consultant to the FCCFA during the selection process for the Convention Center bid. Like Raphael, Myers used his position to help Centerplate win the bid for the Convention Center. Myers pled guilty to one count of "federal programs bribery." The district court sentenced Myers to a non-custodial sentence—four years of probation, restitution, and a forfeiture of the $17,500 that Centerplate paid him. Neither party appealed the sentence.

custodial sentence to promote the goal of general deterrence to other public officials. Although it recognized that Raphael's age and health were significant factors, the government contended that they did not justify a lesser sentence because of the serious nature of the bribery scheme and the need to promote general deterrence. The government also argued that Raphael and Myers were not similarly situated. Raphael was a public official; Myers was not. Raphael had a prior conviction; Myers did not. Raphael obstructed justice; Myers did not. And Raphael's bribery scheme was for a larger sum of money.

Pronouncing sentence, the court first lauded Raphael for his church and community involvement as evidenced by the letters sent to the court on his behalf. The court characterized Raphael's bribery scheme as a "boneheaded attempt" to make money using a position of public trust, and briefly mentioned sentencing commission data on 240 cases of bribery and corruption from fiscal year 2020. The court also recognized Raphael's hardships: "You've come out of prison. You've lost your mother. You've lost your brother. You lost your business. You've lost your reputation." Again mentioning the letters sent on Raphael's behalf, the judge went on to note that he had grown up in the same area as Raphael, and knew members of Raphael's family. Agreeing with the government that general deterrence is the most significant factor of the § 3553(a) factors, the court expressed its certainty that Raphael would not re-offend, mentioned the need to avoid sentencing disparities, and asserted that Raphael's obstruction of justice by way of false statements to the OEC was "more a perception thing."

Without further explanation, the district court sentenced Raphael to a non-custodial sentence of a nominal one day of imprisonment, three years of supervised release, and restitution in the amount of $28,251. The government objected to the sentence as inadequate under the § 3553(a) factors, and requested 18 months of home confinement as part of Raphael's sentence.

No. 21-3898, *United States v. Raphael*

The court granted the government's request, adding 18 months of home confinement to the sentence. The government timely appealed.

## II.

### A. Standard of Review

The government challenges Raphael's sentence as substantively unreasonable. We review Raphael's sentence "under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). In a substantive reasonableness inquiry, we consider whether "the court placed too much weight on some of the § 3553(a) factors and too little on others in reaching its sentencing decision." *United States v. Perez-Rodriguez*, 960 F.3d 748, 753–54 (6th Cir. 2020) (quotation omitted). We also consider whether the district court relied on impermissible factors in sentencing the defendant. *See United States v. Sexton*, 894 F.3d 787, 797 (6th Cir. 2018) (quotation omitted).

Importantly, significant variances from the sentencing guidelines also impact our inquiry. *See United States v. Musgrave*, 761 F.3d 602, 608 (6th Cir. 2014). Although the guidelines "are no longer mandatory," they remain "the starting point and the initial benchmark for choosing a defendant's sentence." *United States v. Demma*, 948 F.3d 722, 726–27 (6th Cir. 2020) (quotation omitted). Therefore, "[t]he greater the variance [from the guidelines], the more compelling the justification must be." *Perez-Rodriguez*, 960 F.3d at 754. "While we do not use any form of strict proportionality review," *United States v. Robinson*, 669 F.3d 767, 775 (6th Cir. 2012), we do "require some correlation between the extent of a variance and the justification for it," *United States v. Grossman*, 513 F.3d 592, 596 (6th Cir. 2008). *See also Gall*, 552 U.S. at 50 ("We find it uncontroversial that a major [variance] should be supported by a more significant justification than a minor one.").

No. 21-3898, *United States v. Raphael*

### B. Raphael's Sentence Lacked an Adequate Explanation

For a sentence to be substantively reasonable, "the district court must explain, based on permissible considerations, how its sentence meshes with Congress's own view of the crime['s] seriousness." *Musgrave*, 761 F.3d at 608 (quotation omitted). This the district court did not do. The court mentioned several § 3553(a) factors such as the seriousness of the crime and the need for general deterrence. For example, it mentioned that bribery by a public official "undermines people's faith in their government," and that general deterrence is the most significant § 3553(a) factor in Raphael's sentencing. But "mere recitation" of these factors will not suffice. *United States v. Christman*, 607 F.3d 1110, 1121 (6th Cir. 2010); *United States v. Morgan*, 635 F. App'x 423, 448 (10th Cir. 2015) (concluding that "lip service to the seriousness of the offense" does not give proper weight to it as a § 3553(a) factor). Rather, the sentence imposed must account for the § 3553(a) factors, and the district court must explain how the sentence accounts for those factors. *See Musgrave*, 761 F.3d at 609; *Gall*, 552 U.S. at 50 (the district court must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance"); *accord United States v. Hayes*, 762 F.3d 1300, 1307–08 (11th Cir. 2014) (finding a below-the-guidelines sentence substantively unreasonable because the district court did not explain how a non-custodial sentence reflected the seriousness of the offense or the need for general deterrence). Without an explanation by the district court, we cannot determine whether the court put too much or too little weight on the seriousness of the crime or on the need for general deterrence.

The need for an explanation is especially acute for variances justified by factors that Congress has disfavored. Raphael's counsel, in arguing for a non-custodial sentence, pointed to Raphael's age and medical conditions. The district court also recognized Raphael's age and

No. 21-3898, *United States v. Raphael*

physical conditions, along with his family and community ties. But the guidelines disfavor consideration of the defendant's age, physical conditions, and family and community ties. *See United States v. Bistline*, 665 F.3d 758, 767 (6th Cir. 2012); *United States v. Bostic*, 371 F.3d 865, 875 (6th Cir. 2004) ("Under the sentencing guidelines, age and health are disfavored factors that the district court may use as bases for granting a downward departure only in exceptional circumstances."). To the extent that the district court relied on these, it did not explain why these factors justified an extreme downward variance from the guidelines range. Nor did it explain why these factors should outweigh other factors such as the need for general deterrence. This does not mean that the district court cannot consider disfavored factors. On the contrary, the district court has broad discretion to vary from the guidelines based on any of the § 3553(a) factors, whether favored or disfavored by Congress. *See Christman*, 607 F.3d at 1119. It just means that for a below-the-guidelines sentence to be substantively reasonable, the district court must explain why it favors sentencing factors that Congress has disfavored. Here, because the district court did not provide any explanation, the sentence that it imposed was substantively unreasonable.

This lack of explanation is also concerning because the district court may have relied on impermissible factors in imposing Raphael's sentence. Take the collateral consequences that Raphael suffered. At the sentencing hearing, the district court made specific mention of some: "You've been to prison. You've come out of prison. You've lost your mother. You've lost your brother. You lost your business. You've lost your reputation." But Raphael's familial, reputational, and economic losses are impermissible considerations for sentencing because many of these collateral consequences result from the conviction, not the sentence. *See Bistline*, 665 F.3d at 765 (explaining "§ 3553(a) plainly states that 'the *sentence* imposed' should 'reflect the seriousness of the offense'" and that collateral consequences of "prosecution and conviction" are

8

No. 21-3898, *United States v. Raphael*

distinct from a defendant's sentence or the "consequences of his sentence"); *see also United States v. Peppel*, 707 F.3d 627, 636 (6th Cir. 2013). What's worse, considering collateral consequences would also result in shorter sentences for defendants with more to lose (i.e., reputation and wealth) and longer sentences for defendants with less to lose. *See Bistline*, 665 F.3d at 765–66. Thus, to the extent that these collateral consequences drove the downward variance, it was in error. While do not know the extent because the district court did not explain the downward variance, it will have another opportunity to clarify on remand what permissible sentencing factors justify the sentence that it decides to impose on Raphael.

The district court judge also appeared to consider his personal connections with Raphael, mentioning letters from family and friends on Raphael's behalf, the fact that he and Raphael had grown up in the same area, and that he knew Raphael and his family. It should go without saying that personal connections to the defendant should not be a basis for a shorter sentence. Leniency for a public official convicted of bribery because the public official shares personal connections with the sentencing judge has the potential to undermine public trust more than the bribery itself. While we do not know whether the judge's personal connections with Raphael were the reason for Raphael's shorter sentence, the district court can explain on remand, relying only on permissible factors this time, what justifies Raphael's sentence.

Finally, we express no views on the length of an appropriate sentence on remand. Trial judges have broad discretion in undertaking the difficult task of sentencing individuals. This is so for good reason: "While trial judges sentence individuals face to face for a living, we review transcripts for a living. No one sentences transcripts." *United States v. Poynter*, 495 F.3d 349, 351 (6th Cir. 2007).

9

No. 21-3898, *United States v. Raphael*

## III.

For the foregoing reasons, we VACATE Raphael's sentence and REMAND the case for resentencing consistent with this opinion.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 21-3898

UNITED STATES OF AMERICA,

   Plaintiff - Appellant,

   v.

JOHN P. RAPHAEL,

   Defendant - Appellee.

> **FILED**
> Apr 05, 2023
> DEBORAH S. HUNT, Clerk

Before: BATCHELDER, WHITE, and MURPHY, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Southern District of Ohio at Columbus.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that sentence imposed on John P. Raphael is VACATED, and the case is REMANDED for resentencing consistent with the opinion of this court.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk